UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PLURIA GARDNER, *Pro Se*, | ) | Case No.: 1:20 CV 2368 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAELS STORES, INC., *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is Defendant Michaels Stores, Inc. ("Michaels") and Defendant Karen Hughes' ("Hughes") (collectively, "Defendants") Motion to Dismiss or Compel Arbitration ("Motion"). (ECF No. 7.) For the following reasons, the court grants the Motion to Compel Arbitration and dismisses this action.

## I. BACKGROUND

Plaintiff briefly worked at a Michaels store near Atlanta, Georgia, from early August until early September 2019 when she moved to Cleveland, Ohio. According to Plaintiff, she expected to work at the Michaels store in Mayfield Heights after moving to Ohio. But the manager of the Mayfield Heights location decided not to employ Plaintiff after receiving negative feedback about Plaintiff's work performance from Hughes, Plaintiff's manager in Georgia. Hughes allegedly reported that Plaintiff was scheduled to work at the Georgia store on September 6, 2019, and September 7, 2019, and that Plaintiff skipped those shifts without giving a valid excuse or justification. Plaintiff disputes that version of events, however, and maintains that she was not

scheduled to work those days because she was already in Cleveland on September 6, 2019. (Compl. ¶ 17, ECF No. 1-1.) Moreover, while Defendants suggest that Plaintiff quit her job before moving to Ohio, Plaintiff asserts that she properly sought and received permission to transfer to the Mayfield Heights store but was wrongfully terminated as a result of Hughes' false accusations.

On September 10, 2020, Plaintiff filed a Complaint against Defendants in Cuyahoga County Common Pleas Court, seeking unspecified "substantial money damages" in excess of $25,000. (Compl. ¶ 24, ECF No. 1-1.) Although the inartfully drafted Complaint does not specify any causes of action, it appears that Plaintiff means to assert a defamation claim. (*Id.* ¶ 3.) Presumably, she also seeks to recover lost wages as well as reinstatement as a Michaels employee. (*See id.* ¶¶ 19–24.) On October 16, 2020, Defendants removed to this court on the basis of diversity jurisdiction. (ECF No. 1.) Rather than answer the Complaint, Defendants filed a Motion on November 6, 2020, seeking to compel arbitration in accordance with the parties' Arbitration Agreement. (ECF No. 7.) After a long delay, Plaintiff finally responded to Defendants' Motion on April 9, 2021.[1] (ECF No. 11.)

## II. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may seek an order compelling arbitration from any district court, "which, save for such agreement, would have jurisdiction under Title 28 . . . of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4. Federal law requires that courts "rigorously enforce agreements to arbitrate," *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (internal citation

---

[1] Plaintiff labeled her filing a "Motion Opposing Dismissal," but the court accepts it as Plaintiff's Response in Opposition.

omitted), and examine contract language in light of the strong federal policy favoring arbitration, *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) ("[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration.").

When considering whether to compel arbitration, the district court must determine whether the parties agreed to arbitrate the dispute at issue. If the district court is satisfied that the agreement to arbitrate is not "in issue," it must compel the parties to arbitrate. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). However, "if the validity of the agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question." *Id.*; *see also* 9 U.S.C. § 4. To place the arbitration agreement at issue, the party opposing arbitration must show a genuine issue of material fact as to the agreement's validity. *Great Earth*, 288 F.3d at 889. This standard mirrors the showing needed to withstand summary judgment in a civil suit. *Id.* Also like summary judgment, the court must view facts and draw inferences in the light most favorable to the non-moving party. *Id.*

The Sixth Circuit has articulated a four-part test to assess motions to compel arbitration:

> [F]irst, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714.

## III.  LAW AND ANALYSIS

Because the FAA applies, the court must decide whether a valid agreement to arbitrate exists between the parties and whether the claims in Plaintiff's Complaint fall within the scope of that

agreement. The court addresses each question in turn.

### 1. Agreement to Arbitrate

The record in this case clearly establishes the existence of a valid arbitration agreement. As part of its online application process, Michaels offered to enter into a mutual agreement to arbitrate any and all claims arising out of Plaintiff's employment through the American Arbitration Association ("AAA"). (Mot. at PageID #30–31, ECF No. 7; *see also* Creagan-Wysocki Decl. ¶¶ 9–10, ECF No. 7-1.) Defendants contend that this mutual promise to arbitrate employment-related disputes constitutes consideration for the Arbitration Agreement. (Mot. at PageID #31, ECF No. 7.) Further, Plaintiff and a representative for Michaels both signed the agreement, explicitly accepting its terms. (Creagan-Wysocki Decl., Attach. 3 at PageID #45, ECF No. 7-1.) And there is nothing in the record that suggests duress, coercion, or unconscionability. Therefore, the court finds that the parties' Arbitration Agreement is valid and enforceable.

### 2. Scope of Arbitration Agreement

The Sixth Circuit held in *Solvay Pharms. v. Duramed Pharms.*, *Inc.*, 442 F.3d 471 (6th Cir. 2006), that:

> [w]hen faced with a broad arbitration clause, such as one covering any dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration. . . . Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.

*Id.* at 482 (cleaned up); *see also Simon v. Pfizer, Inc.,* 398 F.3d 765, 773 n.12 (6th Cir. 2005) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). Here, there is no question that the broad language of the parties' Arbitration Agreement encompasses all

-4-

of Plaintiff's claims. The Agreement provides:

> In consideration for being considered for employment and the mutual promises to arbitrate, the company (which includes Michaels Stores, Inc. and any parents, subsidiaries, divisions, affiliates, and/or related entities) and I mutually understand and agree, through this "Mutual Arbitration Agreement," that any and all claims or disputes, past, present or future between me and the Company, including without limitation those arising out of or related to my application for employment the Company's screening, verification, hiring or selection processes, and/or employment and/or termination of employment with the Company will be submitted to and will be decided by a single arbitrator through a binding arbitration and not by way of court or jury trial.

(Creagan-Wysocki Decl., Attach. 3 at PageID #43, ECF No. 7-1.) Accordingly, the court finds that Plaintiff's claims fall within the scope of the parties' Arbitration Agreement.

### 3.  No Federal Claims

If the plaintiff asserts federal statutory claims, the court "must consider whether Congress intended those claims to be non-arbitrable." *Stout*, 228 F.3d at 714; *see also Rose v. Volvo Const. Equip. N. Am., Inc.*, No. 1:05-CV-168, 2007 WL 846123, *13 (N.D. Ohio Mar. 20, 2007). Because Plaintiff asserts only state law claims, this factor does not apply.

### 4.  Whether to Stay or Dismiss

The court concludes that this matter should be dismissed because all of Plaintiff's claims must be submitted to arbitration. *See Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."). Staying the action and retaining jurisdiction serves no purpose because any post-arbitration remedy sought by the parties would entail nothing more than a limited review of the arbitrator's award, and not "renewed consideration and adjudication of the merits of the controversy." *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.

1992). Therefore, the court finds that dismissal is appropriate.

## IV.  CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion. (ECF No. 7.) The court hereby dismisses this action and orders Plaintiff to submit her claims to arbitration through the AAA in accordance with the parties' Arbitration Agreement.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

May 27, 2021

-6-